THE PUSEY AND JONES COMPANY, a corporation of the State of Delaware, defendant below, plaintiff in error, *vs.* CHARLES LOVE AND GRANT HORNADAY, assignees of the Bank of Fort Scott, plaintiffs below, respondents in error.

*Constitutional Law—State Statute; Validity of—Retroactive · or Prospective—Impairment of Obligation of Contract—Power of Legislature—Federal Constitution.*

A statute of the State of Kansas provided that a creditor of an insolvent corporation might maintain an action against any person who was a stockholder therein, and recover an amount equal to the par value of the stock of such defendant in the company. Subsequent to the accruing of the plaintiff's cause of action the Legislature of Kansas passed another act, (approved in 1899), vesting in the receivers of insolvent corporations the power to collect from stockholders all unpaid subscriptions, and also an amount equal to the par value of the stock held by each, the money so collected, to be held for the benefit of all the creditors of the corporation.

*Held*, that the later act impaired the obligation of the defendant's contract, if considered to be retroactive, in violation of the constitution of the United States, and to that extent is invalid because it wiped out completely every remedy against stockholders that existed at the time the contract came into force under the earlier statute, and left no vestige of a remedy of any sort that existed prior to its passage; while on the other hand the new remedies which it provided for the enforcement of the constitutional liability failed to include any proceeding that could be set in motion by any individual creditor or any number of creditors.

(*June* 1, 1906.)

NICHOLSON, Ch., and SPRUANCE and GRUBB, J. J., sitting.

*Benjamin Nields* for plaintiff in error.

*Harry Emmons* for respondents in error.

Supreme Court, June Term, 1906.

WRIT OF ERROR to the Superior Court for New Castle County.

NICHOLSON, Ch., delivering the opinion of the Court.

This was an action brought in the Superior Court for New Castle County by Charles Love and Grant Hornaday, assignees of the Bank of Fort Scott, plaintiffs below, against the Pusey

PUSEY AND JONES CO. vs. LOVE AND HORNADAY. 81

OPINION.

and Jones Company, a corporation of the State of Delaware, asserting its liability under the provisions of the constitution and laws of the State of Kansas, for a debt due to the plaintiffs below, as assignees of the Bank of Fort Scott, from the Parkinson Sugar Company, a corporation of the State of Kansas, in which the defendant was a stockholder—being the owner and holder of six shares of the capital stock of the par value of one hundred dollars each.

The Constitution of the State of Kansas provided, Article 12, Section 2, as follows:

"Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder; and such other means as shall be provided by law, but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes."

The General Statutes of 1868 of that State, Chapter 23, contained the following provisions:

"Section 32. If any execution shall have been issued against the property or effects of a corporation, except a railway or religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no excecution shall issue against any stockholder, except upon an order of the Court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and, upon such motion, such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

Section 40 (as amended in 1883) Laws of 1883, c. 46, p. 88:

"A corporation is dissolved—first, by the expiration of the time limited in its charter; second, by a judgment of dissolution rendered by a Court of competent jurisdiction; but any such

corporation shall be deemed to be dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability, if it be shown that such corporation has suspended business for more than one year, or that any corporation now so suspended from business shall for three months after the passage of this act fail to resume its usual and ordinary business."

"Section 44. If any corporation, created under this or any general statute of this State, except railway or charitable or religious corporations, be dissolved, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the corporation in such suit; and if judgment be rendered, and execution satisfied, the defendant or defendants may sue all who were stockholders at the time of dissolution, for the recovery of the portion of such debt for which they were liable, and the execution upon the judgment shall direct the collection to be made from the property of each stockholder respectively; and if any number of stockholders (defendants in the case) shall not have property enough to satisfy his or their portion of the execution, then the amount of deficiency shall be divided equally among all the remaining stockholders and collections made accordingly, deducting from the amount a sum in proportion to the amount of stock owned by the plaintiff at the time the company dissolved."

The plaintiffs' amended declaration after reciting the above constitutional and statutory provisions alleges, as follows:

"That the said, The Parkinson Sugar Company, was incorporated and organized for manufacturing purposes and was not a railway, religious or charitable corporation; that it had a capital of one hundred and seventy-five thousand dollars ($175,000) divided into seventeen hundred and fifty shares of the par value of one hundred dollars each; that the said The Pusey and Jones Company, the defendant in this action, at the time of the dissolution of the said The Parkinson Sugar Company, hereinafter mentioned, and for ten years last past was and has been the owner and holder of six shares of the capital

PUSEY AND JONES CO. vs. LOVE AND HORNADAY. 83

OPINION.

stock of the said The Parkinson Sugar Company. That on or about the fifteenth day of August, 1896, an action was commenced in the District Court of Bourbon County, in the State of Kansas, in which the said The Parkinson Sugar Company, was defendant; that said action was founded upon certain promissory notes held by said plaintiff against the said defendant, to secure the payment of which said notes certain mortgages were executed and delivered by said defendant to said plaintiff; which said mortgages were secured upon certain pieces and parcels of lands, situate in Bourbon County aforesaid; that on the twenty-fourth day of September, 1896, a judgment was entered upon said action in said Court, in favor of said plaintiff, the Bank of Fort Scott, and against the said defendant, The Parkinson Sugar Company, for the sum of fifteen thousand eight hundred and seventy dollars and eighteen cents ($15,870.18), with interest thereon from said date at the rate of ten per centum per annum; and said mortgaged premises were charged with the payment of said judgment; that on the sixteenth day of November, 1896, an order of sale was issued upon said judgment, known under the Kansas practice as a 'special execution,' for the purpose of selling the real estate described in said judgment; that on the twenty-first day of December, 1896, said order for sale was enjoined by an injunction issued by Honorable Frederick Scoville, Probate of Bourbon County, State of Kansas, which said injunction was afterwards dissolved; that on the twenty-fifth day of August, 1899, the Bank of Fort Scott, regularly assigned its aforesaid judgment against the said The Parkinson Sugar Company, unto the said Charles Love and Grant Hornaday, the plaintiffs in this action; that on the fourth day of September, 1899, an alias order of sale was issued to sell the real estate described in said judgment of said plaintiffs against the said The Parkinson Sugar Company, under which alias order said real estate which constituted all the property of the said, The Parkinson Sugar Company, was sold for the sum of thirteen thousand and fifty dollars, ($13,050,00), which said sum of thirteen thousand and fifty dollars, less two hundred and thirteen dollars and thirty cents ($213.30), costs was on the

eighth day of October, 1899, applied as a credit upon said judgment leaving a balance of seven thousand four hundred and ninety-seven dollars and five cents ($7,497.05) due thereon; that on the eighteenth day of June, 1900, the first general execution was issued upon said judgment to collect the balance due thereon and on the thirteenth day of August, 1900, the Sheriff made return of said execution, as follows: 'Received this writ June 18, 1900, I made diligent search and inquiry for property of the within defendant, on which to levy and there cannot be found any property whatever to levy this execution belonging to the within defendant, The Parkinson Sugar Company. I return this execution wholly unsatisfied. No property found. This 13th day of August, 1900, W. E. Brooks, Sheriff; J. E. Ball, Deputy Sheriff.' That the said The Parkinson Sugar Company continued in business until the ninth day of October, 1899, on which date it suspended business, which it has never since resumed."

Upon this statement of facts the plaintiffs claim that under the provision of the Constitution and Statutes of the State of Kansas, above recited, they are entitled to recover from the defendant the sum of six hundred dollars (that being the par value of his stock in the said The Parkinson Sugar Company) with interest thereon from the first day of September, 1901, as and for the said defendant's individual liability as a stockholder of the said Sugar Company for the dues or debts of the said company.

The defendant by leave of the court filed special pleas to the plaintiffs' amended declaration setting forth at length the provisions of an act passed by the Legislature in December, 1898, and approved January 7, 1899, by which the defendant claims that the Legislature of Kansas amended the above recited act of 1868 so as to repeal the provisions upon which the defendant's liability depends, and denies any liability under the provision of the Constitution of Kansas, above quoted, independently of legislation.

PUSEY AND JONES vs. LOVE AND HORNADAY. 85

OPINION,

The amending statute is quoted, as follows:

"Section 14.  That Section 32, chapter 23, of the General Statutes of 1868, be and the same is hereby amended to read as follows: Sec. 32.  If any execution shall have been issued against the property or effects of a corporation, and there cannot be found any property upon which to levy such execution, such corporation shall be deemed to be insolvent, and upon application to the Court from which said execution was issued or to the judge thereof, a receiver shall be appointed, to close up the affairs of said corporation.  Such receiver shall immediately institute poceedings against all stockholders to collect unpaid subscriptions to the stock of such corporation, together with the additional liability of such  stockholders equal to the par value of the stock held by each.  All collections made by the receiver shall be held for the benefit of all creditors, and shall be disbursed in such manner and at such times as the court may direct.  Should the collections made by the receiver exceed the amount necessary to pay all claims against such corporation, together with all costs and expenses of the receivership, the remainder shall be distributed among the stockholders from whom collections have been made, as the court may direct; and in the event any stockholder has not paid the amount due from him the stockholders making payment shall be entitled to an assignment of any judgment or judgments obtained by the receiver against such stockholder, and may enforce the same to the extent of his proportion of claims paid by them."

"Section 15.  That Section 46, Chapter 23, of the General Statutes of 1868, be and the same is hereby amended to read as follows:  Sec. 46.  The stockholders of every corporation, except railroad corporations or corporations for religious or charitable purposes shall be liable to the creditors thereof for any unpaid subscriptions, and in addition thereto for an amount equal to the par value of the stock owned by them, such liability to be considered an asset of the corporation in the event of insolvence, and to be collected by a receiver for the benefit of all creditors."

"Section 17. Sections 6, 9, 24, 32, 41, 44 and 46 of Chapter 23 of the General Statutes of 1868 are hereby repealed."

The plaintiffs demurred to all the special pleas and the court sustained the demurrer, and on election of the defendant's attorneys a final judgment was entered in favor of the plaintiffs.

A precisely similar action was brought in the Circuit Court of the United States for the Southern District of New York prior to the passage of the Act of 1898-9 which amended the Statute of 1868 as above, and final judgment was entered for the plaintiff—76 *Fed.* 697.

That judgment was affirmed by the Circuit Court of Appeals, 51 *U. S. App.* 536. The defendant thereupon applied for and obtained a writ of certiorari, 168 *U. S.* 710; and finally in the Supreme Court, all the questions involved were exhaustively discussed and settled in an elaborate opinion by Mr. Justice Brewer—*Whitman vs. Oxford National Bank*, 176 *U. S.* 562.

It was held by the Supreme Court in that case that the liability, which, by the Constitution and laws of Kansas, (Statute of 1868) was declared to rest upon the individual stockholder was not "open to judicial condemnation," was "contractual in its nature though statutory in its origin," and that "an action therefor could be maintained in any court of competent jurisdiction."

That case leaves nothing open to discussion with regard to the liability of the defendant prior to the passage of the Act of 1898, and the only question before us under this writ of error is as to how far, if at all, the Act of 1899 could validly operate to repeal the right of action in favor of creditors given by the Kansas Statute of 1868, so far as creditors are concerned, whose debts accrued prior to the repeal.

If construed so as to affect such creditors, would it "impair the obligation of the contract" in violation of the Constitution of the United States, and be to that extent invalid as contended by the plaintiff below, respondent above?

In other words, must the statute of 1898-9 be given prospective operation only?

The accepted principles by which all courts are guided in the application of that provision of the Federal Constitution, are given by Judge Cooley on pages 344–5–6 of his Treatise on Constitutional Limitations; "any law which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only as a remedy, is directly obnoxious to the prohibition of the Constitution." *McCracken vs. Hayward*, 2 *How*. 608. "Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligations contracted; and it does not impair it provided it leaves the parties a substantial remedy, according to the course of justice as it existed at the time the contract was made. *Coolley Constitution Limitation, page* 346, 6 *Edition; Bronson vs. Kinzie*, 1 *How*. 316 and a multitude of authorities cited in the notes."

Cases applying these principles are as numerous as the statutes that seem to be near the dividing line so described—a line which in the very nature of things it is most difficult to draw in many cases.

In the case before us the constitutional question is left open for this Court to pass upon, because, although it has been presented to the only tribunal which can conclusively decide it—the United States Supreme Court—that Court declined to express an opinion upon it, deciding the case presented upon other grounds. *Evans vs. Nellis*, 187 *U. S.* 280.

We also find that the courts of Kansas have not passed upon it. In the first of the two cases in which the present question is raised in the State of Kansas,—*Waller vs. Hamer*, 65 *Kan.* 174—action was brought by the receiver under the Act of 1898-9 and the court says: "One other question is argued by counsel for plaintiff in error which may arise upon a future trial. It is contended that the Act of 1898, as applied to the facts in this case, is retroactive in its operation and impairs the obligation of the contract sued on in this case. Suffice it to say that, as to the plaintiff in error, it does not impair his obligation or deprive him of any right he had prior to its passage."

In the second and last Kansas case, *Henley vs. Stevenson,*

67 *Kan.*, 7, the Court says:

"As the judgment against the corporation in the case at bar was not rendered until February 15, 1900, or more than a year after the remedy by motion for order awarding execution against stockholders in corporations for the collection of corporate judgments was repealed, and as the record in this case is silent as to any contractual liability existing between Stevenson and the corporation prior to the taking effect of the Act of 1898, it follows of necessity, that the order was without authority of law, is erroneous, and must be reversed."

Now, although this may be construed to be an intimation on the part of the Kansas Supreme Court that its decision would have been different had the judgment been entered, or had a contractual liability been shown to exist prior to the taking effect of the Act of 1898-9, yet it cannot be taken as an authority for the proposition that the Act of 1898 could have no retroactive effect.

These two cases, the only Kansas cases in which the effece of the Statute of 1898 is involved, contribute so little to the solution of the question that it is not worth while to state them at greater length; but in the case of *Woodworth vs. Bowles*, 61 *Kan.*, 569, the reasoning of the court in holding another, somewhat similar statute to be invalid, so far as it was meant to be retroactive, would seem to involve a similar ruling upon the statute now before us.

This case of *Woodworth vs. Bowles* is cited at considerable length in the only case in which the precise question before us under this writ of error is discussed and decided,—*Evans vs. Nellis*, 101 *Fed.*, *page* 920, *&c.*; the same case that was referred to above as having been carried to the Supreme Court,—187 *U. S.*, 270–280.

This was an action brought in the Circuit Court of the United States for the Northern District of New York by the Receiver of a Kansas corporation appointed in accordance with the provisions of the Act of 1898-9, and in every essential particular is identical with the case before us, raising the same

issues. The only difference being that in the case of *Evans vs. Nellis* the action was brought against a stockholder of an insolvent Kansas corporation under the Statute of 1898-9, while in the case before us it was brought under the Statute of 1868.

Crissey and Streeter were the two judgment creditors of the insolvent corporation in that case and the Court after stating the points decided by the Supreme Court in the case of *Whitman vs. Oxford National Bank* above cited, proceeds to analyze and contrast the Statutes of 1868 and 1898-9 as follows:

"Applying the law of the Whitman case directly to the facts now before the court, it will be seen that the defendant was only under obligation to pay the Crissey and Streeter judgments, and such other debts as were reduced to judgment. If he had a defense against any of these judgment creditors he could assert it. If he were required to pay he could himself compel other stockholders to contribute. Having paid all the judgment creditors his obligation ceased. *Hoyt vs. Bunker*, 50 *Kan.* 574; 32 *Pac.* 126. On the other hand Crissey and Streeter were vested with certain important and valuable rights under the contract between them and the stockholders. They as individuals could enforce their judgments against any stockholder wherever found. They were not called upon to share the amount so recovered with simple contract creditors or to pay any part thereof to a receiver or as costs and fees of the officers of the court. If one of these judgment creditors were the first to sue a solvent stockholder whose liabiliiy was equal to the amount of the judgment, his debt was safe. This then was the situation when the law of 1899 went into operation. The new law wrought a sweeping and radical change. New liabilities are created and new remedies are provided. Section 23, as amended, provides for the appointment of a receiver upon an exeeution being returned *nulla bona*. The receiver so appointed shall close up the affairs of such corporation and shall immediately institute proceedings against all the stockholders to collect unpaid subscriptions and the additional liability. The money thus collected shall be held for the benefit of all the creditors and shall be used under the direction of the court to pay the costs and

expenses of the receivership and all claims against such corporation. Any judgment obtained by the receiver against a stockholder who has not paid the amount due from him may be assigned to the stockholders who have paid and enforced by them against the delinquent stockholder for his proportionate amount. Section 46, as amended, provides that the stockholders shall be liable to the creditors for unpaid subscriptions and in addition thereto an amount equal to the par value of the stock owned by them, such liability to be an asset of the corporation to be collected by a receiver for the benefit of all the creditors. Under the former law the stockholder's additional liability was an obligation to pay the judgment creditor who was unable to collect his debt from the corporation. Under the present law this liability is an asset of the corporation for the benefit of all the creditors. Under the former law the right to collect his judgment rested with the judgment creditor. He could act immediately. Nothing but his own laches could impair this right. Under the latter law the judgment creditor has no advantage over the most negligent and supine contract creditor. All alike must trust to the discretion of the receiver; if he fails in duty the debt of the judgment creditor is lost. In one case the entire indebtedness of the stockholder was applied without diminution upon the judgment. In the other case the entire amount collected may by order of the court be devoted to the payment of the receiver's commissions, costs and expenses. Under the former law the stockholder could avail himself of any defense, counterclaim or set-off he might have against the pursuing creditor. These defenses no longer exist. Under the former law, when he had paid the judgment creditors the liability of the stockholder ended; now he must pay the entire amount to the receiver even though it be twice the amount necessary to pay the corporation's debts. Whether any of the balance be returned or not depends largely upon the economy, prudence and honesty of the receiver. In short, the new law destroys absolutely all rights which the judgment creditor, qua a judgment creditor, possessed; takes away all right of independent action and compels him to share *pro rata* with all the creditors. As to the stockholder, it deprives

PUSEY AND JONES CO. vs. LOVE AND HORNADAY. 91

OPINION.

him of defenses which would defeat the former action, compels a full payment when a partial payment was oftentimes sufficient and devotes the amount recovered to the payment of obligations not mentioned in the former statute. It is not difficult to suppose a case where a stockholder absolutely safe from pursuit under the former act may be financially ruined under the present act. For instance, where a stockholder was sued for, say $10,000, by the only judgment creditor. If the judgment creditor owed the stockholder the sum of $10,000 it is manifest that he could not recover. Or, assume a situation where the entire amount recovered is consumed in paying the expenses of the receivership. In the first of these instances the receiver takes money which could not be collected under the former act; in the second, he applies the money collected to the payment of obligations which are created for the first time by the act of 1899, and which are not 'dues from corporations.' *Ward vs. Joslin* (*C. C.*) 100 *Fed.* 676. It is true that under the prior statute in certain circumstances an equal amount might be recovered, but the stockholder might discharge his entire obligation by paying much less than the full amount. Under the present law his liability is increased by compelling him to pay the full amount and by applying it in payment of an entirely new class of obligations.'

"Since the trial of this action the Supreme Court of Kansas, in the case of *Woodworth vs. Bowles*, 60 *Pac.* 331, has declared unconstitutional similar provisions of the Kansas statute relating to the liability of stockholders in banks. Section 55 of chapter 47 of the act of 1897, provides that the receiver shall, after the expiration of one year, institute the proper proceedings in the name of the bank for the collection of the liability of the stockholders to be distributed *pro rata* among the creditors. No action by creditors against stockholders shall be maintained unless it shall appear to the satisfaction of the court that the receiver has failed to begin the action as required by law. The court held that if the statute were given a retroactive construction it was invalid because it deprived creditors of their

right to maintain proceedings against the stockholders or, at least, postponed that right for a year. The Court says:

" 'The act of 1897 does not assume to abrogate the contract or relieve the stockholder from liability, but it does assume to do two other things: First, to suspend for one year the pursuit by the creditor of the special remedy afforded by the laws in existence at the time of the making of the contract; and, second, to deprive the creditor of such remedy altogether if the receiver at the end of the year should institute an action for him and for the other creditors, in which last-mentioned case the fund collected by the receiver is to be distributed *pro rata* between all creditors * * * If, however, the new enactment, although not designed to effect the substantial right, does nevertheless embarass or substantially delay the creditor in the collection of the debt, it will be held to have impaired the obligation of the contract. We deem section 55 of the law of 1897, in its application to existing contracts between stockholders and creditors, to be an enactment of the latter kind. * * * If the receiver should institute an action and collect the liability, even though every stockholder should be solvent and should discharge his liability in full, the creditor might, nevertheless, not receive full payment of his claim. He must share with other creditors. * * * Vigilance and diligence on the part of a creditor in pursuit of one or the other of his remedies in one or another of the contingencies stated, might avail to secure the payment of his claim in full. Under the statute as it now exists, vigilance and diligence may avail nothing.'

"It is thought that the logic of this opinion when applied, in similar circumstances, to the law of 1899 in its retroactive aspect, must result in a similar judgment. In *Bronson vs. Kinzie*, 1 *How*. 311, 11 *L. Ed*. 143, the Supreme Court decided that where a mortgage contained a power to the mortgagee to sell on breach and thereby pay the debt, a subsequent law giving the mortgagor 12 months to redeem and prohibiting the property from being sold for less than two-thirds its appraised value, so altered the remedy as to impair the obligation of the contract. *Barnitz vs. Beverly*, 163 *U. S*. 118, 16 *Sup. Ct*. 1042, 41 *L. Ed*.

# PUSEY AND JONES CO. vs. LOVE AND HORNADAY. 93

OPINION,

93. It is true that a law will not ordinarily be declared unconstitutional on the objection of one whose interests are not injuriously affected by the objectionable features. If the accusations against the act in question were only those which might be presented by the judgment creditors, whose rights have manifestly been invaded, there might be more difficulty in declaring it invalid. There are, however, exceptions to the general rule which are stated by Judge Cooley to be found in cases 'where it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the Legislature will be defeated if it shall he held valid, as to some cases and void as to some others.' *Cooley, Const. Lim.* (*4th Edition*) 219. It would, indeed, be a strange anomaly if the statute in question were held valid when attacked by stockholders and invalid when attacked by judgment creditors. Such a construction would lead to endless confusion and injustice. But, as has been seen, the contractual rights of the stockholders have been impaired equally with those of the judgment creditors. It is undoubtedly true that whatever belongs merely to the remedy may be changed as the legislature may direct, but the court cannot believe that this familiar rule is applicable to a law which makes such fundamental changes in the terms of the contract."

The Court concludes, "that the law in question (Statute of 1899) impairs the obligation of the defendant's contract, if construed to act retroactively and to that extent is invalid."

The case of *Evans vs. Nellis* came afterwards, as we have already seen, to the United States Supreme Court from the Circuit Court of Appeals for the Second Circuit, instructions being desired upon the following questions certified by the Circuit Court of Appeals to the Supreme Court:

"*First.* Are sections 14 and 15 of the laws of Kansas of 1899 valid in view of the provision of the Constitution of the State of Kansas respecting the individual liability of the stockholders of corporations, or are they invalid as subjecting such stockholders to liabilities other than 'dues from corporations'? "

"*Second.* Do sections 14 and 15 aforesaid contravene the Constitution of the United States by impairing the contractual liability of the defendant previously existing as a stockholder of a corporation of the State of Kansas?"

"*Third.* Is the plaintiff, as a receiver appointed as aforesad, entitled to maintain an action in the Circuit Court of the United States for the Northern District of New York?"

Mr. Justice White delivered the opinion of the Court and considers only the third question; he concludes, "*The third question will be answered no, and it is unnecessary to answer the other questions.*"

This conclusion of the Supreme Court sustains the court below, whose opinion is quoted above at such length, and in declining to pass upon the constitutional question, the court only observed the general rule that a court will not "pass upon a constitutional question and decide a statute to be invalid unless a decision upon that point becomes necessary to the determination of the case." *Cooley Const. Lim.* 196.

This lengthy review and analysis of the contrasted statutes of 1868 and 1899 renders it unnecessary to enter into further detailed discussion of them.

The statute of 1899 "is not open to judicial condemnation" any more than was the statute of 1868 which received that negative approval from the Supreme Court in the case of *Whitman vs. Bank* cited above. Its merits or demerits, however, are not in question before us, for it is manifest from simple inspection that it wiped out completely every remedy against stockholders that existed at the time the contract came into force under the statute of 1868, and left no vestige of a remedy of any sort that existed prior to its passage; while on the other hand the new remedies which it provided for the enforcement of the constitutional liability failed to include any proceeding that can be set in motion by any individual creditor or any number of creditors.

The hands of creditors are completely tied by it and the proceedings it prescribes are analogous to those provided in insolvency and bankruptcy acts, or to proceedings in courts of equity for the winding up of insolvent corporations.

This analogy will assist us to a clearer apprehension of the arguments against the validity of the act in relation to contracts existing prior to its passage. In fact, in the light of that analogy the arguments seem conclusive.

When Chief Justice Marshall, in the great leading case of *Sturgis vs. Crowinshield*, 4 *Wheaton*, 122, put upon the constitutional provision which prohibited the States from passing laws "impairing the obligation of a contract," an interpretation, which once for all rendered invalid the insolvent laws of the States, so far as they sought to affect pre-existing contracts, debts existing at the time of their passage, he also first laid down and defined the distinction between statutory provisions affecting only the remedy, and those affecting the substance of the contract by materially impairing the power of enforcement.

On the other hand, Federal Bankruptcy Statutes are valid as to debts contracted before the passage of the law as well as afterward, only because the Federal Constitution does not forbid Congress to pass laws impairing the obligations of a contract.

And finally when we come to consider the scope of the jurisdiction of courts of equity in the matter of insolvent corporations, we find that there could be no question of retroactive or prospective effect in such cases, because the Court of Chancery has been so long appointing receivers with those powers from which has been gradually evolved the whole complicated modern system, that practically we may say that its jurisdiction has existed for that "time whereof the memory of man runneth not to the contrary."

We think that from these considerations and from the reasoning of the cases we have cited, the conclusion is inevitable that the Statute of 1899 does impair the obligation of the defendant's contract, if considered to be retroactive in violation of the Constitution of the United States, and is to that extent invalid as is contended by the plaintiff below, respondent above.

We think there was no error in the rulings of the court below, and, therefore, the judgment of the court below is affirmed.