**Betty GRANT et al., Plaintiffs,**

v.

**Weston E. NELLIUS, Secretary of Finance, et al., Defendants.**

Supreme Court of Delaware.

Submitted June 17, 1977.

Decided July 27, 1977.

Harvey B. Rubenstein, Wilmington, for plaintiffs.

A. Gary Wilson and Carolyn Berger, Deputy Attys. Gen., Wilmington, for defendants.

Sheldon N. Sandler, of Bader, Dorsey & Kreshtool, Wilmington, for *amicus curiae*.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

DUFFY, Justice:

This is a certification proceeding, submitted under the Delaware Constitution, Art. 4, § 11(9), from an action in the Superior Court by salaried employees of the State (plaintiffs) against the Secretary of Finance and other officials (defendants) seeking a declaratory judgment on the constitutionality of 61 *Del.Laws*, ch. 20; that Act rescinded a statutory salary supplement for State employees which was scheduled to be paid on and after April 1, 1977.[1]

The following questions of law were certified and accepted by this Court:

"1. Does the state law (61 Del.Laws, Ch. 20) constitute an impairment of the obligation of contract in violation of Article I, § 10 of the United States Constitution?

2. Does the state law (61 Del.Laws, Ch. 20) constitute a deprivation of property without due process of law in violation of the Fourteenth Amendment of the United States Constitution and Article I, § 7 of the Delaware Constitution?"

Plaintiffs rely on Federal and State constitutional provisions[2] and on 29 *Del.C.* § 6532, which provides in full as follows:

"(a) All employees of the State, except elected officials, the judiciary, cabinet secretaries and members of boards and commissions, shall be paid a salary supplement as a percentage of their base pay

---

1. The Delaware State Education Association was granted permission to participate in this proceeding as an *amicus curiae*.

2. The Constitutional provisions are:
 (a) "No State shall . . . pass any . . Law impairing the Obligation of Contracts, . . . ." *U.S. Const.*, Art. I, § 10.

(b) ". . . No State shall make or enforce any law which shall . . . deprive any person of . . . property, without due process of law; . . . ." *U.S. Const.*, Amend. XIV, § 1.

(c) ". . . [N]or shall he be deprived of . . . property, unless by the judgment of his peers or by the law of the land." *Del. Const.*, Art. I, § 7.

equivalent to the percentage change in the Consumer Price Index for the Philadelphia region. The Consumer Price Index figure at the beginning of each calculation period shall be subtracted from the Consumer Price Index at the end of the calculation period, multiplied by 100 and divided by the Consumer Price Index at the beginning of the period to determine the percentage of increase or decrease for cost-of-living for that period. This calculation shall be made each 6-month period ending December 31 and June 30 and become effective for each succeeding 6-month period beginning April 1 and October 1 respectively. The supplement percentage may not exceed 10 percent on an annual basis.

(b) The Governor shall create an Advisory Council on State Salary Administration to administer this section.

(c) For purposes of this section, an 'employee' is defined as one who is compensated with a regular state pay check.

(d) For purposes of the section, 'base pay' is defined as all salary, wages and fees, including overtime payments paid to an employee.

(e) With the exception of cost-of-living salary supplements, the Board of Trustees of Delaware State College shall have the full prerogative of determining the amount of salary increments that employees shall receive. Those employees who are members of the bargaining unit shall not be affected by this subsection."

House Bill No. 172, 61 *Del.Laws*, chapter 20, approved by the Governor on March 25, 1977, reads as follows:

"The cost of living salary supplement authorized by Section 6532, Title 29, Delaware Code, and scheduled to take effect April 1, 1977, is hereby rescinded."

We discuss the questions *seriatim.*

## I

Plaintiffs were employed during the six-month period from July 1, 1976 through December 31, 1976. They allege that they were entitled to receive on April 1, 1977 a cost-of-living base salary supplement authorized by § 6532 and it is conceded that, but for H.B. No. 172, plaintiffs would have received such supplement.[3]

## II

We first consider the Contract Clause. Recognizing that a threshold question in all such cases is whether a contract exists between the State and its employees, *In re State Employees' Pension Plan*, Del.Supr., 364 A.2d 1228, 1234 (1976), plaintiffs begin their argument by asserting that a contract was created consistent with the terms of § 6532, and that all employees who worked for the State during the period from July 1 to December 31, 1976, earned the salary supplement and were entitled to it as a matter of right on April 1, 1977. Plaintiffs then cite Federal and State decisions standing for the proposition that a State is prohibited by Article I, § 10 of the Federal Constitution from depriving its employees of vested employment benefits accrued for service already performed.[4]

As a matter of general constitutional law, the Courts of this State have long recognized, of course, that "[a]ny law which in its operation amounts to a denial or obstruction of the rights accruing by a contract, . . . is directly obnoxious to the prohibition of the Constitution." *Pusey & Jones Co. v. Love*, Del.Supr., 6 Pennewill 80, 66 A. 1013, 1015 (1906) citing Judge Cooley's treatise on Constitutional Law, at 344–46. See, for example, *Globe Liquor Co. v. Four Roses Distillers Company*, Del. Supr., 281 A.2d 19, 21 (1971), cert. denied, 404 U.S. 873, 92 S.Ct. 103, 30 L.Ed.2d 117 (1971) holding the Delaware Franchise Se-

---

3. The parties agree that H.B. No. 172 rescinded only the April 1, 1977 payment and was not a general repealer, but that question is not before us.

4. See, for example, *State of Mississippi v. Miller*, 276 U.S. 174, 48 S.Ct. 266, 72 L.Ed. 517 (1928); *Fisk v. Police Jury of Jefferson*, 116 U.S. 131, 6 S.Ct. 329 (1885); *Board of Com'rs v. Lindemann*, Ind.Supr., 165 Ind. 186, 73 N.E. 912 (1905); *Ramey v. State*, Mich.Supr., 296 Mich. 449, 296 N.W. 323 (1941); *McCann v. City of New York,*, N.Y.Supr., 52 A.D. 358, 65 N.Y.S. 308 (1900); *Montgomery County v. Talley*, Tex.Civ.App., 169 S.W. 1141 (1914); *State v. Miller*, 108 Wash. 390, 184 P. 352 (1919).

curity Law, as applied to the agreement under consideration, to be in violation of the Contract Clause; and *Opinion of the Justices*, Del.Supr., 283 A.2d 832, 834 (1971), advising the Governor that a Delaware statute providing for arbitration of cancellation of insurance contracts violated Article I, § 10.[5] And we have recently held that the Contract Clause prohibited the General Assembly from unreasonably modifying the State Employees' Pension Plan through passage of special legislation granting benefits to ineligible individuals. *In re State Employees' Pension Plan, supra.* The underlying premise for the decision is that public employees who participate in a pension plan acquire vested contractual rights to the fruits of the pension fund upon fulfillment of the eligibility requirements for a pension. See *Dorsey v. State ex rel. Mulrine*, Del.Supr., 283 A.2d 834 (1971).

 The guaranties of the Contract Clause relied upon by the plaintiffs are unquestionable; but to state them is not to answer the critical question before us. To be sure, vested contract rights may not be abrogated by later law, but the question is whether plaintiffs and other State employees had any vested contract rights under § 6532. And as to this, neither the *Pension Plan* decision nor the other cited cases are determinative. Instead, we must look to the Statute and consider whether expressly or by reasonable implication, plaintiffs acquired rights under it.

The parties agree that § 6532(a) is ambiguous, at least in terms of the certified questions, and construction is therefore required. As we read the Act, it divides, for analysis purposes, into four constituent parts:

(1) *Coverage* : The Act specifies who is included within its terms, namely: "[a]ll employees of the State" (with specified exceptions) and, under (c), an "employee" is one who is "compensated with a regular state pay check."

(2) *Purpose* : The purpose of the Act is to pay all employees "a salary supplement as a percentage of their base pay".

(3) *Amount of the percentage* : A formula is stated in § 6532(a) by which base pay is supplemented in an amount "equivalent to the percentage change in the Consumer Price Index for the Philadelphia region." But there is a limitation on the amount of any change, that is, it "may not exceed 10 percent on an annual basis."

(4) *Calculation period and effective date* : A calculation is to be made "each 6-month period ending December 31 and June 30," and each calculation so made is "effective for each succeeding 6-month period beginning April 1 and October 1 respectively."

Plaintiffs construe § 6532 to mean that all eligible employees who work for the State during a calculation period and who are employed on the effective date of a supplement are entitled to receive a cost-of-living salary adjustment based on the change in the Consumer Price Index during the period. Thus they contend that all eligible employees who were employed on April 1, 1977 and who worked for the State during the preceding calculation period were entitled, as a matter of right, to the salary supplement. This reading of the Statute, however, contains a fatal defect; namely, it wishfully converts a neutral calculation period into a period of entitlement. That construction certainly is not supported by the language of the Act.

In our view, § 6532 is obviously and clearly prospective in design and objective. Its sole purpose is to create an automatic mechanism to keep *future* State salaries in line with inflationary trends in the regional economy so that salaries will be adjusted to meet marginal changes in the "cost-of-living." We find nothing therein which is designed, as plaintiffs contend, to compensate State employees for past services rendered, or to induce individuals to "enter and

---

5. But compare *Price v. All American Engineering Company*, Del.Supr., 320 A.2d 336 (1974) (involving the Workmen's Compensation Act) and *Paradee Oil Co. Inc. v. Phillips Petroleum Co.*, Del.Ch., 320 A.2d 769 (1974), aff'd, Del.Supr., 343 A.2d 610 (1975) (involving the Franchise Security Law) which illustrate that the mandate of the Contract Clause is not absolute and must yield, at times, to the right of the State to use its police powers to protect the interests of all citizens.

remain in public service". *In re State Employees' Pension Plan, supra* at 1235. The latter may be a consequence of the Statute's operation, but the calculation period provided in § 6532 is merely a length of time in which to measure economic change, and nothing more. Employment during such period does not entitle a State employee to any supplemental employment benefits.

Thus, the Statute basically provides that on April 1 and October 1 of each year, "all" employees (with specified exceptions), regardless of length of service and regardless of whether or not employed during the calculation period, shall be paid a salary supplement equal to the change in the Consumer Price Index for the Philadelphia region measured during the period from January 1 to June 30, or July 1 to December 31. The key dates under the plan are April 1 and October 1, the effective dates of the increase, for on those dates the right to the supplement vests in each State employee compensated at that time with a "regular state pay check." Compare *Kingston v. McLaughlin*, D.C.Mass., 359 F.Supp. 25 (1972), aff'd 411 U.S. 923, 92 S.Ct. 1900, 36 L.Ed.2d 388 (1973); *Bennett ex rel. Arizona State Pers. Comm'n v. Beard*, 27 Ariz.App. 534, 556 P.2d 1137 (1976); *Butterworth v. Boyd*, 12 Cal.2d 140, 82 P.2d 434 (1938); *Austin v. Benefield*, 140 Ga.App. 96, 230 S.E.2d 16 (1976); *Committee of Int. & Res. v. City of New York*, 87 Misc.2d 504, 386 N.Y.S.2d 177 (1976); *Personnel Division of Executive Dep't v. St. Clair*, 10 Or.App. 106, 498 P.2d 809 (1972); and *Yelle v. Kramer*, 83 Wash.2d 464, 520 P.2d 927 (1974).

In this context, then, the salary supplement falls within the category of future benefits which may be lawfully adjusted or eliminated by the State prior to the vesting date. See 63 *Am.Jur.*2d, Public Officers and Employees § 368 (1972); 81 *C.J.S.* States § 92f(2) (1953); 67 *C.J.S.* Officers § 94 (1950); and cases cited therein. Since that was accomplished in this case, plaintiffs never acquired any rights to the salary supplement.

We hold, therefore, that H.B. No. 172 did not violate the Contract Clause of the Federal Constitution.

### III

The second certified question is whether passage of the repealer Act deprived plaintiffs of property without due process of law in violation of the Fourteenth Amendment of the Federal Constitution and Article 1, § 7 of Delaware's Constitution. This does not require discussion because, having established that plaintiffs did not acquire a contract right to the salary supplement, it follows that they did not possess a constitutionally protected property interest which was taken by the Act.

We hold, therefore, that the repealer is not violative of either the Due Process Clause of the Federal Constitution or the Law of the Land Clause of Delaware's Constitution.

\* \* \*

Both certified questions are answered in the negative.