Dora Marie LILLARD and Nancy McKinnon, Plaintiffs,

v.

DELAWARE STATE HOSPITAL FOR the CHRONICALLY ILL, et al., Defendants.

Vernon L. GRICE, Plaintiff,

v.

SUSSEX COUNTY VOCATIONAL TECHNICAL SCHOOL DIS-TRICT, et al., Defendants.

Madelyn KOPEC, Plaintiff,

v.

STATE DEPARTMENT OF FINANCE; The State of Delaware; Colonial School District, Defendants.

Carol A. REED, Plaintiff,

v.

The STATE of Delaware, et al., Defendants.

Civ. A. Nos. 81-143, 81-327, 81-570 and 82-159.

United States District Court, D. Delaware.

Dec. 7, 1982.

---

712

John J. Schmittinger and Philip Eric Herrmann, Schmittinger & Rodriguez, Dover, Del., for plaintiffs in Civ. A. No. 81–143.

Regina M. Mullen, State Sol., and Susan H. Kirk Ryan, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants in Civ. A. No. 81–143.

John J. Schmittinger, and Philip Eric Herrmann, Schmittinger & Rodriguez, Dover, Del., for plaintiff in Civ. A. No. 81–327.

James F. Waehler, Tunnell & Raysor, Georgetown, Del., for defendants in Civ. A. No. 81–327.

Harvey B. Rubenstein, Wilmington, Del., for plaintiff in Civ. A. No. 81–570.

Roger A. Brown, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants State Dept. of ·Finance and the State of Delaware in Civ. A. No. 81–570.

David H. Williams, Morris, James, Hitchens & Williams, Wilmington, Del., for defendant Colonial School Dist. in Civ. A. No. 81–570.

Hank R. Bernstein, Wilmington, Del., for plaintiff in Civ. A. No. 82–159.

Roger A. Brown, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants State of Delaware, The State Dept. of Finance, The State Dept. of Public Instruction, Dennis Sullivan, II and William B. Keene in Civ. A. No. 82–159.

David H. Williams, Morris, James, Hitchens & Williams, Wilmington, Del., for defendants Red Clay Consolidated School Dist. and Joseph E. Johnson in Civ. A. No. 82–159.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

. Five plaintiffs, in four lawsuits involving 23 defendants,[1] desire this Court to proceed on their claims in these cases joined for argument. The defendants request that this Court abstain from deciding these four cases, or alternatively dismiss plaintiffs' suits to allow defendants an opportunity to obtain dispositive rulings from the Delaware Supreme Court on critical state law issues affecting plaintiffs' federal law claims. An examination of the relevant state law, as applied to the factual context giving rise to the claims of each of the five plaintiffs, is necessary to explicate fully the abstention problem these cases present.

1. The State of Delaware and the State Department of Finance were named as defendants in two of the four complaints.

## STATE LAW FRAMEWORK

Prior to 1975, when a state merit system employee was incapacitated by reason of disease or injury sustained by accident arising out of and in the course of employment, the employee continued to receive the equivalent of full pay. This was accomplished by complementing Workmen's Compensation payments with the employee's sick leave benefits in an amount equal to the difference between the Workmen's Compensation payment and full pay. The additional payments made from the employee's sick leave benefits, however, resulted in a corresponding reduction in the amount of sick leave available to the employee.

In 1975, the Delaware State Legislature concluded it was not "equitable or fair for a Merit System employee to be forced to use sick leave ... for a job related accident or illness"[2] not arising out of the employee's own negligence. Its response was to enact 29 *Del.C.* § 5933 covering all State of Delaware employees. That statute as passed in 1975 provided:

> The rules shall provide for annual, sick and special leaves of absence, with pay or at reduced pay. No employee of the State, including those exempted under § 5903 of this title, shall be charged sick leave for any period of absence from work due to injury, personal injury or occupational disease sustained by accident arising out of and in the course of actual employment with the State, providing such injury or illness is not the direct result of the employee's misconduct, and occurs during a period of employment for which the employee is entitled to receive pay.

The 1975 statute was administratively interpreted to require the employing agency to make supplemental payments in an amount equal to the difference between Workmen's Compensation payments and full pay[3] for "as long as an individual receives workmen's compensation *and*[4] remains an employee of the state."[5]

This open ended obligation to pay supplemental benefits elicited a response from employing state agencies and the Delaware State Legislature. The former resorted to terminating employees receiving Workmen's Compensation in order to end their obligation to make supplemental wage payments. The Delaware General Assembly responded by amending 29 *Del.C.* § 5933 to limit the obligation of a state employer to make supplemental payments to a maximum period of three months. 29 *Del.C.* § 5933 as amended—effective July 1, 1981 —provides:

> Whenever an officer or employee of the State, including those exempt from the classified service, qualifies for Workmen's Compensation benefits, such officer or employee, for a period not to exceed three months from the date such compensation begins, shall not be charged sick leave and shall receive from the State the difference, if any, between the total of: a) the amount of such compensation; b) any disability benefits received under the Federal Social Security Act; and c) any other employer supported disability program, and the amount of wages to which the officer or employee is entitled on the date such compensation begins, provided the injury or disease for which such compensation is paid is not the direct result of such officer or employee's misconduct and occurs during a period of employment for which the employee is entitled to receive wages.

C.A. No. 82–159, Doc. No. 10, A–4.

The four present suits all arise out of the cessation of the payment of supplementary salary benefits provided for by 29 *Del.C.* § 5933.

## FACTUAL BACKGROUND

*Civil Action No. 81–143 (Lillard and McKinnon)*

Plaintiffs, Dora Marie Lillard ("Lillard") and Nancy McKinnon ("McKinnon"), were

---

2. C.A. No. 82–159, Doc. No. 10, App. –1.

3. C.A. 81–143, Doc. No. 13A, p. 12–13.

4. Emphasis added.

5. C.A. No. 82–159, Doc. No. 10, App. –3.

employees of the Delaware Hospital for the Chronically Ill. Lillard, a food services worker, and McKinnon, an attendant, were both injured on the job in 1975. Both were awarded Workmen's Compensation and received supplemental pay benefits under 29 *Del.C.* § 5933 until April 1980, at which time they were terminated, presumably because they were unable to work. Because they were no longer employees of the State of Delaware, payment of supplemental benefits under 29 *Del.C.* § 5933 immediately ceased, although both plaintiffs continued to receive Workmen's Compensation.

The cessation of payment of supplemental benefits resulted in the filing of a complaint in this Court on March 30, 1981 against the Delaware State Hospital, and three state administrators in their official and individual capacities, alleging substantive due process and equal protection violations. Thereafter, on August 28, 1981, the matter was stayed upon the suggestion of the defendant, and without opposition by plaintiffs, because a case containing possible dispositive legal issues, *Young v. Milford School District,* [6] was wending its way to the Delaware Supreme Court.

No decision was reached by the Delaware Supreme Court in *Young* because that case was settled.[7] No defendant in the present cases, however, was a defendant in *Young,* and therefore was not in a position to insist upon a definitive statutory interpretation by the State's highest court.

Following dismissal of *Young* in December, 1981, the State of Delaware, et al., filed a Complaint for Declaratory Judgment on January 8, 1982[8] in the State Superior Court, and sought certification to the Delaware Supreme Court. In response to this action by the State of Delaware, plaintiffs in this case moved to dissolve the stay

granted August 28, 1981. Plaintiffs contend that the stay is no longer warranted because the *Young* case has been finally resolved. The State has countered by urging the stay be continued in effect on abstention grounds. On April 28, 1982, the Superior Court refused the State's request to certify the issues involving 29 *Del.C.* § 5933 to the Delaware Supreme Court until this Court resolves the abstention question.[9]

### Civil Action No. 81–327 (Grice)

Plaintiff, Vernon L. Grice ("Grice"), a non-merit tenured school teacher employed by the Sussex Vocational-Technical School District, was first injured in 1976. After collecting Workmen's Compensation, he returned to work in the fall of 1978, only to leave again in January, 1980. The parties agree that plaintiff could not work for medical reasons. They disagree, however, as to the underlying medical cause for his inability to work. Plaintiff asserts he suffered a recurrence of his 1976 injury, while the defendant school district contends the 1980 leave was caused by other medical reasons.

Irrespective of the cause of the incapacitating medical condition, the parties do agree Grice was terminated as of June 30, 1980, although they disagree as to cause of termination. Plaintiff claims he was terminated so that defendant could avoid paying supplemental benefits under 29 *Del.C.* § 5933. The defendant asserts that plaintiff's termination was a statutorily authorized reduction in force ("RIF").[10] While there is disagreement as to the reason for termination, there is no dispute that Grice was afforded a post-termination hearing on August 28, 1980. At that hearing, no challenge was made to the School Board's right

**6.** C.A. No. 80C–MY–8 (Del.Super. May 14, 1981) (unreported letter decision). The *Young* case was originally filed in the Delaware District Court. The matter found its way into the state court system when the matter was stayed on abstention grounds. *Young v. Milford School District,* et al., C.A. No. 79–301 (D.Del. April 16, 1980—J. Steel).

**7.** Plaintiff had prevailed in Delaware Superior Court. C.A. No. 80C–MY–8 (Del.Super. May 14, 1981) (unreported letter decision).

**8.** C.A. No. 81–143, Doc. No. 13A—pp. A–10–11.

**9.** C.A. No. 81–570, Doc. No. 19, p. A–1.

**10.** *See* 14 *Del.C.* § 1411.

to terminate plaintiff in order to avoid the payment of supplemental benefits under 29 *Del.C.* § 5933. Further, plaintiff did not petition for judicial review of the termination decision under 14 *Del.C.* § 1414. Instead, he filed this action in federal court against the school district and eight other school district officials in their official and individual capacities.

The issues involved in the Grice case are further complicated by the fact that Grice did not receive an award of Workmen's Compensation benefits until February 11, 1981, retroactive to February 4, 1980. Thus, at the time of termination, Grice was not actually receiving Workmen's Compensation benefits, although he was entitled to them.[11]

As of the date of oral argument, no petition for declaratory judgment had been filed by the school district in state court, nor was there any indication that such a suit would be filed. Grice has requested that this Court dissolve the stay issued on August 28, 1981.[12] The defendant school district seeks a continuance of the stay based on abstention.

*Civil Action No. 81–570 (Kopec)*

Plaintiff, Madelyn Kopec ("Kopec"), instituted suit against the State of Delaware, the State Department of Finance, and the Colonial School District alleging a wrongful taking of vested property rights. Injured on April 8, 1980 while working as a school custodian for the New Castle County School District, she has never been terminated by either that District or its successor, the Colonial School District.[13] Instead, notwithstanding an alleged disability leave pol-

icy of the school district which would have resulted in her receiving full pay through June 30, 1982, the supplemental benefits to Workmen's Compensation which brought Kopec's payments up to full pay were terminated as of September 30, 1981. Full pay ceased as of November 11, 1981 with the exhaustion of accrued sick leave and vacation benefits. It is alleged and uncontested that the supplemental benefits were terminated under the authority of 29 *Del.C.* § 5933 as amended effective July 1, 1981.

The State of Delaware and Colonial School District, defendants in this action, filed declaratory judgment actions in the State Superior Court and thereafter petitioned for certification of the questions directly to the Supreme Court. As in C.A. No. 81–143 (Lillard and McKinnon), the State Superior Court judge declined to sign the certification request. The Superior Court pointed out that the abstention issue was pending in this (federal) Court, and in the event that this (federal) Court "declines to proceed ... counsel are free to seek certification or expedited disposition of State questions [sic] in [Superior] Court." [14] Subsequently, the defendants made a motion with this Court requesting that this Court abstain from hearing plaintiff's claims so that the State Court action can proceed.

*Civil Action No. 82–159 (Reed)*

Plaintiff, Carol Reed, is a non-terminated, non-merit, tenured teacher employed by defendant, Red Clay Consolidated School District, who was receiving Workmen's Compensation and supplemental benefits following an injury incurred in September,

---

11. Grice's entitlement to these benefits was unilaterally determined by a third party insurance carrier.

12. A stay was never formally ordered in this case. Grice, however, is represented by the same counsel representing the plaintiffs in C.A. No. 81–143 (Lillard and McKinnon). A stay was ordered only in C.A. No. 81–143, but counsel has proceeded as if Grice was bound by that stay. The Court will proceed as if the stay entered in C.A. No. 81–143 applied to the Grice case as well. In the other two cases currently before the Court (C.A. No. 81–570 and C.A. No. 82–159), no stay was ever entered. The de-

fendants in those cases have moved this Court to abstain.

13. The Delaware State Legislature passed legislation permitting the division of the New Castle County School District into four districts, one of which is the Colonial District. Apparently, Kopec was injured while employed at a school within the geographical boundaries of that portion of the New Castle County School District which is now known as the Colonial District.

14. C.A. No. 81–570, Doc. No. 19, p. A–1.

1980. Like the plaintiff in C.A. No. 81–570 (Kopec), Reed asserts not only an unconstitutional deprivation of supplemental benefits for so long as she is disabled, but also a right to supplemental benefits through June, 1982 based upon an alleged school district "paid disability leave" policy. Like Kopec, Reed filed suit in this Court against her employer school district, the State of Delaware, and the State Department of Finance and Public Instruction. In addition, three officials were named as defendants in their official capacities only. Suit was brought after the school district ceased making supplemental benefit payments in accordance with the July 1, 1981 amendment to 29 *Del.C.* § 5933. Unlike Kopec, a declaratory judgment action has not been filed in the State Court system because of an anticipated in personam jurisdiction problem stemming from the fact that Reed is not a resident of the State of Delaware. Nonetheless, defendants have moved this Court to abstain from deciding plaintiff's claims.

In summary, all four cases were filed as a result of the cessation of supplemental benefit payments under 29 *Del.C.* § 5933. In two of the cases,[15] supplemental benefits were not paid after plaintiffs' employment was terminated. While the reason for termination of employment is disputed as to one of those plaintiffs,[16] the other plaintiffs were discharged so that they would no longer be an employee of the State, and thus allegedly no longer entitled to supplemental benefits under 29 *Del.C.* § 5933 prior to amendment. Plaintiffs in the remaining cases have not been terminated as employees.[17] Instead, supplemental benefits were withdrawn pursuant to 29 *Del.C.* § 5933 as amended, which defendants assert limited the alleged entitlement to supplemental benefits to three months. Finally, declara-

tory judgment actions have been filed in state court with respect to some plaintiffs whose employment has been terminated[18] and one plaintiff who has not been terminated.[19] Stated differently, legal issues arising from cessation of supplemental benefits under 29 *Del.C.* § 5933 both before and after amendment are the subject of state declaratory judgment actions necessarily filed after the filing of these federal court actions.

## PROCEDURAL AND JURISDICTIONAL POSTURE

Plaintiffs have asserted claims based upon the equal protection and due process clauses of the United States Constitution and Section 1983 of the Civil Rights Act of 1871 (42 U.S.C. § 1983). The jurisdictional basis in all the cases is predicated upon 28 U.S.C. § 1343(3) and (4),[20] 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act), and pendent jurisdiction.

Answers have been filed in only two of the cases,[21] while motions to stay or dismiss have been filed in all cases. Included in the answers were, *inter alia,* defenses based upon the Eleventh Amendment. Concerned about the jurisdictional implications of these defenses, this Court *sua sponte* requested supplemental briefing on the issue of Eleventh Amendment immunity. The Court will first analyze the Eleventh Amendment immunity question, and then proceed to abstention.

## I. ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment restricts the right of any party to bring suit against a state in federal court. The Eleventh Amendment provides:

---

**15.** C.A. No. 81–143 (Lillard and McKinnon) and C.A. No. 81–327 (Grice).

**16.** C.A. No. 81–327 (Grice).

**17.** C.A. No. 81–570 (Kopec) and C.A. No. 82–159 (Reed).

**18.** C.A. No. 81–143 (Lillard and McKinnon).

**19.** C.A. No. 81–570 (Kopec).

**20.** Section 1343 is the jurisdictional counterpart to 42 U.S.C. § 1983.

**21.** C.A. 81–143 (Lillard and McKinnon), and C.A. 81–327 (Grice).

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State.

Notwithstanding the literal language of the Amendment, it is well established that a nonconsenting state is immune from suits brought in federal court by citizens of its own state, as well as by citizens of another state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 342 (1890).

■ There are exceptions, however, to the blanket immunity afforded to the states from suit in federal court. In *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that the Eleventh Amendment does not bar injunctive relief having prospective application only against state officials acting in their official capacity. The Court stated:

> The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of the complainants is a proceeding without the authority of, and one which does not affect, the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of the state official in attempting to use the name of the State to enforce the legislative enactment which is void because unconstitutional. If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subject in his person to the consequences of his individual conduct.

*Id.* at 159–160, 28 S.Ct. at 453–454.

The doctrine of *Ex Parte Young,* however, does not allow suit for damages against an individual state officer in his official capacity when the action is in essence one for the recovery of money from the state. *Ford Motor Company v. Department of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). In addition, the Supreme Court in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), recognized that in certain situations even prospective injunctive relief might so burden the state treasury as to make the state the real party in interest and allow for an Eleventh Amendment bar.

■ In addition to the exception set forth in *Ex Parte Young,* it is also well-settled that the Eleventh Amendment does not bar suits for damages against state officials in their individual capacities. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *West v. Keve,* 571 F.2d 158 (3d Cir.1978). However, those individuals have available a qualified immunity and "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Furthermore, the Eleventh Amendment only protects the state itself from suit in federal court, it does not protect a municipal corporation or a political subdivision of the state. *Mt. Healthy School District v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

■ This Court has *sua sponte* raised the issue of the application of the Eleventh Amendment in each of the four cases.[22] The supplemental briefing by the parties indicates that the parties are generally in accord on the scope of the Eleventh Amendment immunities involved in these cases.

1. *Civil Action No. 81–143 (Lillard and McKinnon)*

In this case, plaintiffs seek the supplemental benefits allegedly wrongfully withheld under 29 *Del.C.* § 5933. Plaintiffs also request prospective injunctive relief requiring the payment of such benefits in the

---

**22.** The issue of Eleventh Amendment Immunity may be raised at any point in the litigation.

*Edelman v. Jordan,* 415 U.S. at 677–78, 94 S.Ct. at 1362–63.

future. Four defendants were named: Delaware Hospital for the Chronically Ill; Patricia C. Shramm; Roger N. Keister; and Floyd D. Dickey. The latter three defendants were named in both their official and individual capacities.

■■■ The Delaware Hospital for the Chronically Ill is a state agency. *See generally* 31 *Del.C.* Ch. 28. As such, the Hospital is an "arm of the state" and partakes in the state's Eleventh Amendment immunity. *Mt. Healthy School District v. Doyle, supra,* 429 U.S. at 280, 97 S.Ct. at 572. In addition, the claim for damages or unpaid benefits against the remaining three defendants in their official capacities is, in essence, a claim against the state treasury and is therefore proscribed by the Eleventh Amendment. *Ford Motor Company v. Department of Treasury of Indiana, supra,* 323 U.S. at 464, 65 S.Ct. at 350.

However, this Court does have jurisdiction to hear claims for prospective injunctive relief against the individual defendants in their official capacities.[23] *Ex Parte Young, supra.* Further, claims for damages against the individual defendants in their individual capacities are permissible. *Scheuer v. Rhodes, supra.*

### 2. *Civil Action No. 81–327 (Grice)*

■■ In this case, plaintiff's claim is against the Sussex County Vocational-Technical School District and eight school district officials. The defendants' brief concedes that under the criteria set forth in *Mt. Healthy School District v. Doyle,* 429 U.S. 274, 280–81, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977), the defendant school district in this case is not an arm of the state. Based on this concession, and without giving the matter independent consideration, it is held that neither the school district nor its employees are protected by the

Eleventh Amendment from suit in federal court.

### 3. *Civil Action No. 81–570 (Kopec)*

In this case, plaintiff seeks the payment of benefits that are allegedly being wrongfully withheld under 29 *Del.C.* § 5933. Plaintiff also requests prospective injunctive relief requiring that such benefits be paid in the future. Three defendants were named: State of Delaware; State Department of Finance; Colonial School District.

■ Plaintiff's claims against the State of Delaware are barred under the Eleventh Amendment. *Hans v. Louisiana, supra.* The State Department of Finance is a state agency, *see generally* 29 *Del.C.* Ch. 83, and is therefore also protected from suit by the Eleventh Amendment. The defendant school district, however, does not dispute that it is not protected from suit by the Eleventh Amendment under the criteria set forth in *Mt. Healthy School District v. Doyle, supra.*

### 4. *Civil Action No. 82–159 (Reed)*

In this case, plaintiff also is seeking benefits under 29 *Del.C.* § 5933 that are allegedly being wrongfully withheld, and injunctive relief requiring such benefits to be paid in the future. Six defendants were named: State of Delaware; State Department of Finance; State Department of Public Instruction; Red Clay Consolidated School District; Joseph B. Johnson; T. Dennis Sullivan; and William B. Keene—the latter three defendants being sued solely in their official capacities.

■ The Eleventh Amendment shields the State of Delaware, the State Department of Finance, and the State Department of Public Instruction in this action because they are all non-consenting State defend-

---

**23.** Prospective injunctive relief, if granted, will necessitate the payment of benefits to the plaintiff from the state treasury, proscribed in some circumstances under the Supreme Court's decision in *Edelman v. Jordan, supra.* The Court noted in *Edelman,* however, that a grant of prospective relief against state officials will in many cases force the officials to spend

more money from the state treasury than had they been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is permitted under *Edelman,* and indeed is almost inevitable under *Ex Parte Young. Edelman v. Jordan,* 415 U.S. at 668, 94 S.Ct. at 1358.

ants. In this context, both the State Department of Finance and the State Department of Public Instruction are clearly State agencies for purposes of the Eleventh Amendment, given their integral functions in the government of the State. *See generally* 29 *Del.C.* Ch. 83 and 14 *Del.C.* Ch. 1, respectively.

■ With regard to T. Dennis Sullivan, the Secretary of Finance, and William B. Keene, the Superintendent of Public Instruction for the State of Delaware, who have been sued in their official capacities only, the Court has no jurisdiction over the claims against them for unpaid benefits because the State is the real party in interest and the suit is, in essence, one for damages to be paid from the public funds in the State Treasury. *Ford Motor Company v. Department of Treasury of Indiana, supra; Edelman v. Jordan, supra.* However, it would appear that a suit for prospective injunctive relief against these defendants in their official capacities is not barred by the Eleventh Amendment. *Ex Parte Young, supra; Edelman v. Jordan, supra.* Finally, the defendant school district concedes that the Eleventh Amendment does not deprive the Court of jurisdiction over any claims against either the Red Clay Consolidated School District or Joseph E. Johnson in his official capacity as superintendent of such district. *Mt. Healthy School District v. Doyle, supra.*

In summary, the Court holds as a threshold matter that the Eleventh Amendment bars suit against the following defendants: (1) the State of Delaware; (2) the Delaware Department of Finance; (3) the State Department of Public Instruction; and (4) the Delaware Hospital for the Chronically Ill. Therefore, all claims brought against these defendants must be dismissed. In addition, claims against defendants T. Dennis Sullivan, William B. Keene, Patricia C. Schramm, Roger M. Keister, and Floyd D. Dickey in their official capacities for damages or unpaid benefits must also be dismissed because they are in essence claims against the state.

Nonetheless, even after the dismissal of some of the defendants and claims, the central issue of abstention raised by these cases is still not obviated. The claims against the defendant school districts are not proscribed by the Eleventh Amendment. Neither are the claims against the officers of the school districts. In addition, the claims against state officers for prospective injunctive relief are permissible. The claims against the state officers in their individual capacities are also cognizable. All claims against both state and school district officials are subject, however, to the personal immunity defenses available to the defendants. *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The plaintiffs will be given an opportunity to amend their complaints in a manner that conforms to the above analysis. The defendants have no objection in this regard. The amended complaints should be structured so that only the school districts, and officials of the state and the school districts are named as defendants. In addition, claims against state officials in their official capacities must be fashioned to seek prospective relief only. All other claims may be for both damages and injunctive relief.

## II. ABSTENTION

■ The more difficult problem is whether this Court should abstain from deciding the four cases. Since the Supreme Court decision in *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), it has been recognized that in certain situations, a federal district court, in its discretion, may decline to proceed with a case even though it properly has jurisdiction. The cases in which this has been recognized are usually referred to as establishing an "abstention doctrine," but it is more precise to refer to "abstention doctrines" as there are at least four identified lines of cases providing a basis for a federal court to abstain. Wright, *Law of Federal Courts,* § 52 at 218 (1976). "Thus abstention is variously recognized: (1) to avoid a decision of a federal constitutional question where the case may be disposed of

on questions of state law; (2) to avoid needless conflict with the administration by the state of its own affairs; (3) to leave to the state the resolution of unsettled questions of state law; and (4) to ease the congestion of the federal court docket." *Id.*

In the four cases currently pending, the various defendants urge this Court to abstain from hearing plaintiffs' claims until the Delaware Supreme Court has given a definitive interpretation of 29 *Del.C.* § 5933, the state law underlying plaintiffs' federal law claims. Although the facts involved in each of these cases are different, and may have a bearing on each of the plaintiffs' ultimate ability to prevail in this matter, the unclear issue of state law is in essence the same in all four cases. Each plaintiff claims that 29 *Del.C.* § 5933, before its effective amendment on July 1, 1981, created vested property and contractual rights in each of the plaintiffs. Alternatively stated, plaintiffs claim an entitlement to the benefits authorized under section 5933 before its amendment. Plaintiffs further reason that, once this "entitlement" or vested interest is created by state law, such interest cannot be divested either by discharge or legislative amendment except in accordance with rights established under the United States Constitution and federal statutes. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). *See also Grant v. Nellius,* 377 A.2d 354, 356 (Del.1977), *quoting Pusey & Jones Co. v. Love,* 20 Del. 80, 66 A. 1013, 1015 (1906).

The plaintiffs implicitly recognize that before this Court can reach their federal claims, it must determine whether 29 *Del.C.* § 5933, before amendment, created vested property rights in the plaintiffs. If section 5933 did not create a vested property interest, then plaintiffs' federal claims will fail. *See Bishop v. Wood,* 426 U.S. at 344, 96 S.Ct. at 2077. The dispute around which this abstention question revolves is whether this Court, or the Delaware Supreme Court, should determine the nature of the entitlement created by section 5933.

Plaintiffs assert that this Court can and must resolve the question of entitlement.

Alternatively, plaintiffs argue that the issue of entitlement under section 5933 has already been decided in *Young v. Milford School District,* C.A. No. 80C–MY–5 (Del. Super. May 14, 1981) (unreported letter decision), and that this Court is bound by that Delaware Superior Court decision.

Defendants' position is that 29 *Del.C.* § 5933 before amendment did not create a vested interest in the plaintiffs, and that there is no federal claim. *Bishop v. Wood, supra.* Defendants urge this Court to abstain in order to allow the Delaware Supreme Court to determine whether section 5933 before amendment did create such vested property interests. If the Delaware Supreme Court holds that section 5933 did not create a vested interest, defendants correctly maintain that this Court would not have to reach plaintiffs' federal constitutional and federal statutory claims.

There are several general principles of abstention that are well established. The Supreme Court has indicated that abstention:

> . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to State court would clearly serve an important countervailing interest.

*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), *quoting County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959). The justification for this extraordinary exception is twofold. First, if a state law can be given a construction that will avoid the necessity of reaching a plaintiff's constitutional claim, abstention can be used to achieve the desirable result of avoiding the unnecessary adjudication of constitutional issues. *McKnight v. SEPTA,* 583 F.2d 1229, 1240 (3d Cir. 1978); *see Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis,

J. concurring). Second, abstention also avoids needless federal court intrusion into legitimate and sensitive state programs. *McKnight v. SEPTA, supra,* at 1240; *see* Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1093–1101 (1974).

■ On the other hand, abstention also gives rise to a number of adverse consequences:

> Relegating the parties to the state courts often results in undue delay in the resolution of the controversy and greatly increases the cost of litigation, factors that heighten the danger that valuable federal rights might be lost.

*McKnight v. SEPTA, supra,* at 1241; *see* Wright, *Law of Federal Courts,* § 52 at 220 (3d Ed.1976) (price of abstention not cheap). Therefore a federal court must always be aware that abstention is an exception to federal court jurisdiction that must be exercised sparingly.

■ The most clearly established abstention doctrine comes in cases where a state law is challenged in federal court as being unconstitutional and there are unsettled questions of state law that may be dispositive of the case. *Railroad Commission of Texas v. Pullman Co., supra.* In the Third Circuit, three factors must be present before *Pullman*-type abstention can be invoked:

(1) There must be uncertain issues of state law underlying the federal constitutional claims brought in federal court.

(2) The state law issues must be amenable to an interpretation by the state courts that would obviate the need for or substantially narrow the scope of the adjudication of the constitutional claims.

(3) It must appear that an erroneous decision of state law by a federal court would be disruptive of important state policies.

*D'Iorio v. County of Delaware,* 592 F.2d 681, 685–686 (3d Cir.1978), *overruled on other grounds, Kershner v. Mazurkiewicz,* 670 F.2d 440 (3d Cir.1982) (en banc). Upon a determination that a particular case falls within these three criteria, the district court must then make a discretionary determination, based on all relevant factors, whether abstention is in fact appropriate. *D'Iorio v. County of Delaware,* 592 F.2d at 686.

*(1) Uncertainty of State Law*

The first criteria is whether there are unsettled questions of state law underlying the federal claims. The Supreme Court "has not defined with precision what degree of unclarity of state law is needed to justify Pullman-type abstention." 17 Wright, Miller, and Cooper, *Federal Practice and Procedure,* § 4242 at 459 (1978).

> Probably the most common formulation is that abstention is required only if state law is fairly susceptible to an interpretation that would avoid the need for constitutional adjudication, but in some cases the Court has seemed to say that even a fair possibility that the state law can be so construed will do, while in other cases the Court has seemed to call for a very strong showing that the construction of the state law may avoid the constitutional question. Indeed the standard on when state law is sufficiently unclear to justify abstention is so amorphous that it has been suggested that decisions on whether to abstain may be shaped by the court's view of the substantive issues that the case presents.

*Id.* at 460 (citations omitted); *see* Field, *The Abstention Doctrine Today,* 125 U.Pa.L. Rev. 590, 602–603 (1977).

■ A federal court must take extreme care in evaluating whether state law is unclear. State law could be considered unclear every time a state Supreme Court has not definitively decided an issue, in which case abstention would be proper in nearly every case where a federal constitutional claim was dependent on the resolution of state law.[24] On the other hand, abstention

---

**24.** *See* Field, *Abstention in Constitutional Cases, supra,* 122 U.Pa.L.Rev. 1071, 1088–1089.

should not be limited to those cases in which the state law issue is totally unclear.[25] As is often the case, the question of state law involved in these cases falls between the two extremes in terms of clarity.

It is undisputed that there is no Delaware Supreme Court decision on the nature of the property interest created by section 5933.[26] Furthermore, there is not a large body of law in Delaware regarding statutory employment benefits. In *In Re State Employees' Pension Plan,* 364 A.2d 1228 (Del.1976), the Delaware Supreme Court determined that state employees had vested contract rights in the State Pension Fund which were constitutionally protected. Conversely, a more recent decision held that future salary increases could constitutionally be denied state employees if eliminated before the date the increases were to go into effect. *Grant v. Nellius,* 377 A.2d 354 (Del.1977). Neither of these decisions, however, are dispositive of the issues involved in this case. Therefore, in a certain sense the state law issues involved in this case can be considered unclear.

 In other ways, however, the question of state law is not "unsettled" within the meaning that "amorphous" concept has sometimes been given in *Pullman* abstention cases. The fact that a district court may have difficulties in determining what a state court may later determine state law to be is an insufficient basis for abstention. *See Meredith v. City of Winter Haven,* 320 U.S. 228, 235, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943), *cited with approval, Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative,* 583 F.2d 104, 111 n. 7 (3d Cir.1978).

The Tenth Circuit in *Vineyard v. King,* 655 F.2d 1016 (10th Cir.1981), considered the issue of abstention in a case similar to those currently before this Court. At issue in *Vineyard* was whether under Oklahoma law, plaintiff had a legitimate claim of entitlement to continued state employment, so as to create a property interest protected by the due process clause of the United States Constitution. *Id.* at 1018–1019. The district court invoked *Pullman*-type abstention because Oklahoma law was unclear.

In reversing the district court's decision to abstain, the Court of Appeals indicated that *Pullman*-type abstention is appropriate only when prior state law provides the federal court with "insufficient guidance" to resolve the unsettled state law issue. *See* 655 F.2d at 1019. The court then stated:

> In short, the difficulty in determining whether plaintiff in the case before us has a property right exists not because of an unclear standard, but because the precise set of facts posed here have not been addressed by the Oklahoma Supreme Court. We do not in any way minimize how difficult it may be to apply the law to the facts, but abstention is inappropriate on this basis. Under such circumstances the district court may not abdicate its duty to adjudicate the matter.

655 F.2d at 1020.

Analyzed in this manner, the question is whether the entitlement issue posed by 29 *Del.C.* § 5933 is a novel issue of law or rather "the application of settled principles to a clear fact pattern." *McKnight v. SEPTA,* 583 F.2d 1229, 1241 (3d Cir.1978). While not clearly so, the instant cases appear to fall into this latter category. This Court has previously determined underlying state law questions of entitlement in order to reach federal claims. *E.g. Hawkins v. Board of Public Education,* 468 F.Supp. 201 (D.Del.1979); *Hickey v. New Castle County,* 428 F.Supp. 606 (D.Del.1977). Indeed in *Hickey,* the Court decided questions of en-

---

**25.** *See id.*

**26.** The recent Superior Court decision in *Young v. Milford School District,* C.A. No. 80C–MY–8 (Del.Super. May 14, 1981) (unreported letter decision), deals with the issue of whether the payment of benefits under 29 *Del.C.* § 5933 could be stopped by termination of employment. In a very brief unreported letter memo-randum, the Superior Court held that the obligation to pay benefits did not end upon termination of employment. That decision cited no precedent in support of its holding and, in any event, that decision is not binding upon this Court. *See Blake v. Kline,* 612 F.2d 718, 723 (3d Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980).

titlement under certain provisions of the New Castle County Code, even though there was no Delaware Supreme Court decision interpreting the Code. 428 F.Supp. at 608–609. In addition, the Delaware Supreme Court decisions in *In Re State Employees' Pension Plan, supra,* and *Grant v. Nellius, supra,* will offer some guidance in resolving the state law issues in these cases.

In sum, the lack of precision in defining the term "unclear" or "unsettled" questions of state law in *Pullman* abstention cases makes it extremely difficult to decide whether the question of entitlement under 29 *Del.C.* § 5933 is an unclear issue of Delaware law. Weighing all the factors involved in these cases, it appears that the issue of state law is not sufficiently unclear to allow for *Pullman*-type abstention. *See Vineyard v. King, supra; McKnight v. SEPTA, supra.* Phrased differently, there is a marginally sufficient clarity in the state law which precludes *Pullman* abstention.

### (2) *Effect of State Law on Plaintiffs' Constitutional Claims*

The second criteria for Pullman abstention is whether 29 *Del.C.* § 5933 can be construed in a manner that would obviate the need of the adjudication of plaintiffs' constitutional claims. "At least since 1970, the Fourteenth Amendment term of 'property' has referred not simply to 'actual ownership of real estate, chattels, or money,' but also to 'interests that a person had already acquired in specific [governmental] benefits.'" *Beitzell v. Jeffrey,* 643 F.2d 870, 873 (1st Cir.1981), *quoting Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972).

> As so interpreted, Fourteenth Amendment protections previously given land owners are provided as well to many others who depend heavily upon the continued availability of, for example, welfare, social security, or government employment.

The broadening of the term "property" to include this "new property," has required the courts to determine when a government benefit rises to the level of protected property.

*Beitzell v. Jeffrey,* 643 F.2d 870, 874 (1st Cir.1981) (citations omitted).

■ The Supreme Court has held that a state can create a protected "new property" interest either by statute or implied contract. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 426 U.S. 341 (1976). The determination of whether such a property interest has been created, however, is determined by reference to state law. *Id.; Skomorucha v. Wilmington Housing Authority,* 504 F.Supp. 831, 834 (D.Del.1980). If the state law does not create a property interest, then there is no interest which is afforded constitutional protection. 426 U.S. at 345 n. 8, 96 S.Ct. at 2077 n. 8; *Northern Pennsylvania Legal Services v. County of Lackawanna,* 513 F.Supp. 678, 682 (M.D.Pa. 1981).

It is clear therefore that in cases such as the instant ones, the constitutional issues are completely controlled by the perimeters of state law. If the state has not created a property right, the plaintiff has no constitutional right which must be protected. Indeed, some commentators have criticized the development of the case law in this area because the Supreme Court has left the constitutional protections afforded by the Fourteenth Amendment overly dependent on the vagaries of state law.[27] Nonetheless, perhaps more than any other area of constitutional law, the resolution of state law issues in cases such as these can obviate the need to reach constitutional claims. Thus the second prong of the *Pullman/D'Iorio* abstention criteria is satisfied in these cases.

### (3) *The Effect of an Erroneous Federal Court Decision Concerning State Law*

The third criteria is whether an erroneous interpretation of state law by this Court

---

**27.** *See* Monaghan, *Of Liberty and Property,* 62 Cornell L.Rev. 405, 439–444 (1977); Van Alstyne, *Cracks on "The New Property": Adjudi-* *cative Due Process in the Administrative State,* 62 Cornell L.Rev. 445, 467–470 (1977).

would be disruptive of important state policies. The issues involved in these cases pertain to the relationship that the State of Delaware has with its employees. This relationship involves over 28,000 state employees,[28] some or many of whom may have claims pursuant to 29 *Del.C.* § 5933 which have not been brought to the attention of this Court.[29] Thus, a federal court determination on the right given to state employees under section 5933 will have an important impact on the state/employee relationship.

The Supreme Court has recognized that a state's relationship with its employees is an important aspect of state sovereignty. *National League of Cities v. Usury,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Indeed, in *Usury,* the Court held that Congress could not constitutionally set a minimum wage for state employees because, *inter alia,* it impermissibly interfered with the allocation of state resources. *Id.* at 847–848, 96 S.Ct. at 2472. In light of the Supreme Court admonitions in this area, it would seem clear that a federal court should not readily intrude upon a state's relationship with its employees that concerns any aspect of the employees' compensation. These considerations support the third criteria of Pullman abstention.

Nonetheless the factors considered by the Supreme Court in *Usury* do not appear to have been applied in the area of abstention. Many of the cases where abstention has been denied deal with the issue of property interests in employment of state employees. *E.g., Vineyard v. King, supra; McKnight v. SEPTA.* Those cases necessarily involved federal intrusion into the relationship be-

tween the state and its employees, but such intrusion was not considered a *fortiori* so great as to require abstention. *See McKnight v. SEPTA,* 583 F.2d at 1241. Such a rationale is in part based upon the belief that an erroneous federal court decision on state law can be corrected by the simple expedient of seeking a state court determination of the issue. *See id.* at 1241–1242.

In sum while it appears to this Court that an erroneous determination of state law would have serious consequences on an important interest of the state, *i.e.,* its relationship with its employees, it would also appear that this consideration has not been of great consequence to courts evaluating the availability of *Pullman* abstention in a given case. Therefore, under the guidance of prior abstention case law, an erroneous decision by this Court of the entitlement rights created by section 5933 should not be deemed disruptive of important state policies as is required under the third criteria of *Pullman/D'Iorio.*

## III. EQUITABLE CONSIDERATIONS

The application of the *Pullman/D'Iorio* standards yields a very close question on whether or not this Court should abstain. Given the overriding obligation that a federal court has to exercise its statutorily established jurisdiction,[30] this Court should not abstain when the established *Pullman* criteria yield such an extremely close result. Therefore, limited solely to the option of abstention, this Court would not abstain.[31]

---

**28.** Affidavit T. Dennis Sullivan, II at ¶ 2.

**29.** There are 397 state employees currently receiving either Workmen's Compensation or total disability payments. Affidavit of Mark Ayers at ¶ 3. The costs for such compensation exceeded $229,000 for May 1982.

**30.** *E.g. Cohens v. Virginia,* 6 Wheat. 264, 5 L.Ed. 257 (1821) (per Marshall, J.).

**31.** The state defendants have also sought abstention on the rationale of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In *Burford,* the State of Texas had developed a complex pattern of regulation be-

cause of the diverse ownership of a single East Texas field. This complex regulatory pattern was disrupted, however, by conflicting state and federal interpretations of the governing law. Initially, the state had concentrated all judicial review in a single state district court. Concurrent federal jurisdiction to review these orders, however, had resulted in considerable difficulties, including at one point the imposition of martial law. In light of these difficulties, the Supreme Court held:

The state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commis-

However, given the fact that the federal claims are so inextricably bound with the resolution of the issue of entitlement under state law, it seems prudent to give the Delaware Supreme Court an opportunity to definitively rule on the issues raised by 29 *Del.C.* § 5933. This is particularly true because there is an additional factor which favors state court resolution of these issues. The essence of plaintiffs' claims is that they want money to which they claim they are entitled to under 29 *Del.C.* § 5933. Plaintiffs also seek damages for the improper retention of such money. As discussed previously, some of plaintiffs' claims for money or damages are proscribed by the Eleventh Amendment in federal court. Such limitations do not exist in state court. Therefore, more complete relief may well be available in state court.

There are two potential avenues of review that promise a quick resolution of these state law issues by the Delaware Supreme Court. First, there are the present state declaratory judgment actions pending in Delaware Superior Court [32] pertaining to the issues involved in these cases. The state plaintiffs in those cases may seek certification to the Delaware Supreme Court of the 29 *Del.C.* § 5933 issues,[33] or expeditious treatment in the Superior Court with a right of direct appeal.

Second, this Court takes judicial notice of the fact that an amendment [34] to the Delaware Constitution was approved by the State Legislature in 1982.[35] The Legislature is expected to take up this amendment early in the next term which commences in January, 1982. That constitutional amendment provides, *inter alia,* for certification of questions of law to the Delaware Supreme Court from the Delaware federal district court, subject to acceptance of the certified question by the Delaware Supreme Court. If approved the amendment will create a procedural mechanism whereby controlling state law questions can be definitively determined by the state's highest court. The United States Supreme Court has strongly endorsed use of a certification procedure, when available, in cases such as those before this Court. *See Lehman Brothers v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974).

The Court is thus confronted with a situation where, although it is clearly preferable to allow the state courts to resolve the state law issues, conventional abstention criteria narrowly indicates that this Court should not abstain. Given such a situation, it is prudent to exercise this Court's discretionary power to stay the

---

sion's decisions in the state court is, expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review is fully preserved here.... Under such circumstances, a sound respect for the independence of state action requires the federal equity to stay its hand.
319 U.S. at 333–334, 63 S.Ct. at 1107–1108.
Generally federal courts have compared the facts in a particular case to those in *Burford* to ascertain if *Burford*-type abstention is appropriate. "... *Burford* abstention, with its resulting dismissal of the action, may be limited to those cases, such as *Burford* itself, where the subject matter of the action is also highly complex and unique." *Santa Fe Land Improvement Co. v. City of Chula Vista,* 596 F.2d 838, 842 (9th Cir.1979). Examined in this light, the cases pending before this Court are clearly not appropriate for *Burford*-type abstention. In

the instant case, there is no complex system of state law upon which federal court intervention will intrude. These cases involve a relatively discreet issue of Delaware law, which do not involve the factors that prompted abstention in *Burford.*

**32.** C.A. No. 81–143, Doc. No. 13A—pp. A–10–11.

**33.** Delaware Superior Court Rule 75.

**34.** Senate bill 272 as amended by Senate Amendment No. 1, 131st Delaware General Assembly (1982).

**35.** In Delaware an amendment may be made to the constitution if it is approved by two-thirds of all members elected to each House of two successive General Assemblies. Del.Const. Art. XVI, § 1. *See Opinion of the Justices,* 264 A.2d 342, 343 (Del.1970). Therefore an amendment approved in 1982 must also receive two-thirds support in each House in 1983 before it becomes a part of the constitution.

present actions until it becomes clear that there can be no timely resolution of the state law issues by the Delaware Supreme Court. It should be no later than mid-1983 before the litigants will know whether timely resolution by the Delaware Supreme Court will become a reality.[36]

The grant of a stay in this situation is not identical to abstention. In *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), the federal district court stayed an action because of concurrent proceedings in state court. The Court of Appeals for the Seventh Circuit found that the stay was the equivalent to a dismissal, *i.e.*, abstention, because once the state court judgment was final, the federal claims were res judicata. *Calvert Fire Insurance Co. v. Will*, 560 F.2d 792, 796 (7th Cir.1977). In reversing the Court of Appeals, a plurality of the Supreme Court reasoned that the stay was not the equivalent of dismissal because the federal judge was free to dissolve the stay based upon new information as to the progress of the state case. 437 U.S. at 665, 98 S.Ct. at 2558.

As in *Will,* this Court will at any time consider lifting the present stay upon information that reasonably prompt resolution in the state court is unlikely. Furthermore, this Court is not dismissing plaintiffs' claims as was arguably the case in *Will.* Here the stay is granted only to allow the state law issues to be resolved in state court. Once the state law is clarified, plaintiffs' constitutional claims will be reviewed by this Court according to the framework established in *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Therefore unlike *Will,* plaintiffs' federal claims ultimately will be resolved in this Court if plaintiffs so desire.[37]

The Court is not unmindful that the issuance of a stay may yield the same result as *Pullman*-type abstention if there is a prompt resolution of the state law issues by the Delaware Supreme Court. Nonetheless, given the fact that many elements favoring abstention exist, along with other factors favoring state court resolution of the issues, any similarity between a stay and abstention is acceptable. It is pointless for this Court to rush to consider these cases when plaintiffs' federal claims will become moot if the Delaware Supreme Court construes 29 *Del.C.* § 5933 in such a way that plaintiffs' entitlement does not rise to a constitutional level. As previously rehearsed, it is well settled that state law determines whether a property interest exists. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). If the state law does not create a constitutionally protectible property interest, then there is no Fourteenth Amendment violation when such "nonproperty" is taken away. See *id.* at 344–345 & n. 8, 96 S.Ct. at 2077–2078 & n. 8; *Northern Pennsylvania Legal Services v. County of Lackawanna,* 513 F.Supp. 678, 682–683 (M.D.Pa.1981). It would be an unnecessary waste of judicial resources to permit these cases to go forward at this time, because review of plaintiffs' federal claims will be necessary only if the Delaware Supreme Court construes 29 *Del.C.* § 5933 in such manner as to vest the plaintiffs with a property interest. In that case this Court will be compelled to decide if the property was confiscated in a constitutional manner. As stated earlier, this Court has the obligation and the power to review plaintiffs' federal claims,[38] if any exist after the Delaware Supreme Court has defined the property interests created by 29 *Del.C.* § 5933.

**36.** Of the two avenues available for Delaware Supreme Court review, the declaratory judgment actions are obviously preferable because they are clearly available and offer the potential for obtaining a faster determination. In addition, the declaratory judgment route offers the possible advantage of the development of a more complete record on which the Delaware Supreme Court can base its judgment.

**37.** The Court has not, as indicated in the opinion, formally abstained in this matter. Nonetheless the Court feels compelled to preserve review of plaintiffs' federal claims in these cases in the same manner discussed by the Supreme Court in *England.*

**38.** *See England v. Louisiana State Board of Medical Examiners, supra.*

In addition, the stay is not equivalent to abstention because this Court is not mandating a Delaware Supreme Court ruling before it will proceed. The stay is granted only to give the state court system time to resolve these issues. If, as indicated earlier, the parties bring to this Court's attention by motion that resolution in state court has become unlikely, this Court will dissolve the stay and resolve the disputed state law issues.

Plaintiffs' motions in C.A. No. 81–143 (Lillard and McKinnon) and C.A. No. 81–327 (Grice) to dissolve the August 28, 1981 stay will be denied. Defendants' motions in C.A. No. 81–571 (Kopec) and C.A. No. 82–159 (Reed) requesting a stay will be granted. An order will be entered lifting the existing stay in C.A. No. 81–143 and C.A. No. 81–327 for the limited purpose of permitting plaintiffs to file within 20 days amended complaints consistent with this opinion. Plaintiffs in C.A. No. 81–570 and C.A. No. 82–159 will also have twenty days to amend their complaints to conform with this opinion.